EX PARTE JACK PINKUS, alias PINKUS TODRESS.

No. 13055.   Delivered November 20, 1929.
Rehearing denied March 5, 1930.
Reported in 25 S. W. (2d) 334.

328

The opinion states the case.

*Harry L. Carter* and *Schlesinger & Schlesinger,* all of San Antonio, and *Cofer & Cofer* of Austin, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Relator was arrested on an executive warrant issued by the Governor of Texas after requisition made upon him by the Governor of the State of New York. He sued out a writ of habeas corpus and upon a hearing was remanded by the District Court of Bexar County to the custody of the Sheriff of Bexar County and the agent of New York State, from which order he appeals to this Court.

Respondents filed no answer to the writ served upon them, which fact relator contends entitles him to his discharge, his claim being that no issue was presented to the trial court and such being the case, he could not be held.

The right to a writ of habeas corpus is guaranteed by the Constitution. Art. 128, C. C. P., provides:

"A judge of the district or county court who has knowledge that any person is illegally confined or restrained in his liberty within his district or county may, if the case be one within his jurisdiction, issue the writ of habeas corpus, without any application being made for the same."

The record in this case shows that relator was brought before the Court issuing the writ by the officers having him in custody; that he was present at the hearing; that the reason for his restraint was plain and unmistakable. Since such a proceeding may, under our

code, be conducted without any pleadings for the relator, the same liberal rule should apply to the respondents. Construing such matter so as to give the fullest effect to the constitutional guarantee above mentioned and in further view of the said article of our code, the right of one restrained of his liberty and the right of the State will not be restricted or abridged by the absence of or defect in the pleadings which bring such matter before the Court, where the record, as in this case, shows a full and fair hearing on the merits and an entire absence of injury.

It is contended that the executive demand of the Governor of the State of New York is void because of a lack of the great seal of New York State attached thereto. The original of such demand is shown in the record and there appears thereon what purports to be a seal and which may be admitted is at this time to be illegible. Whether it was so at the time it was presented to the Governor of Texas is not shown in the record, and conceding the correctness of relator's contention, still it would be presumed in support of the Governor's action in issuing an extradition warrant that a legible seal was attached to the requisition made upon him by the Governor of the demanding state at the time it was presented. A similar contention, however, seems to have been disposed of by the Supreme Court of the State of Washington in the following language:

"The objection is made by the appellant that it does not appear from the record that the seal of the state of Massachusetts was attached to the governor's requisition. The requisition, being correct both in form and substance, we think is sufficient, and the fact, if it is true, that the seal of the state was not attached thereto, would not justify the discharge of the appellant. Hibler v. State, 43 Tex. 197." In re Baker, 57 Pacific 827.

Again it was stated in Kemper v. Metzger, 81 N. E. 663:

"It is not alleged, nor does it appear that Cox was not, at the time he certified the indictment acting as Governor of the state of Tennessee, and, in the absence of words of negation, we must presume that he was so acting at the time."

The case of Vallad v. The Sheriff of St. Louis County, 2 Missouri 24, is cited by relator as sustaining his contention. This case had to do with an extradition warrant and not with a requisition. Apparently the law of Missouri requires such a warrant to be under the great seal of the State. The sufficiency of a requisition is to be measured by the terms of the United States Constitution and the acts of Congress enacted in furtherance and aid thereof and we are

aware of no provision of these which makes mandatory the use of a seal upon a requisition.

The basis of the prosecution in the State of New York appears to have grown out of the delivery by the alleged fiancée of relator of $1,200.00 to him for the purpose of buying furniture for their intended home, which was not so used but appropriated by relator. Testimony was introduced purporting to show that this was not a bona fide prosecution in New York State, but was an attempt to collect this debt and that appellant was not and could not have been guilty of the offense. Extradition cases, as before intimated, are controlled by the provisions of the United States Constitution and the acts of Congress passed in aid and furtherance thereof, which in so far as they may affect the present case are as follows:

Art. 4, Sec. 2, of the United States Constitution provides:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the Governor or Chief Magistrate of the State or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or territory to which such person has fled to cause him to be arrested and secured * * * and cause the fugitive to be delivered to such agent."

Discussing the legal question at issue, the Pennsylvania Supreme Court in the case of Commonwealth of Pennsylvania ex rel. Richard C. Flower, Appt. v. Superintendent of the County Prison of Philadelphia, 21 L. R. A. (N. S.) 939, uses in part the following language:

"He may show that he is not charged with a crime in the demanding state, or that he is not a fugitive from the justice of the demanding state. These are jurisdictional facts. * * * If the jurisdictional facts authorizing the extradition of the accused appear from the papers, the court, on a hearing in habeas corpus proceedings, will not go into the merits of the case, or determine the guilt

or innocence of the accused. * * * If the Court on habeas corpus, inquires into the merits of the charge against the prisoner, or into the motives which inspired the prosecution in the demanding state, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. * * * It would be usurpation of authority for the courts of another state to undertake to determine the question of his guilt in a habeas corpus proceeding. Assuming that the demanding state has complied with the requirements of the Federal Constitution and the act of Congress in making the requisition for the accused, it would be equally an unconstitutional exercise of power for the court of the asylum state to inquire into the motives of the prosecution instituted in conformity with the laws of the demanding state. *. * * The only possible effect of permitting the motives of the private prosecutor to be shown on a habeas corpus extradition proceeding would be to show the guilt or innocence of the accused."

See also Ex parte Denning, 50 Tex. Crim. Rep. 631; Ex parte Hancock, 170 S. W. 145; Ex parte Brown, 178 S. W. 366.

We will not go behind a valid requisition for a fugitive from justice to make any inquiry of the character noted above.

It is also contended that since the indictment against relator is shown to be pending in the County Court of Bronx County, New York, without an order of transfer from the Supreme Court of New York State that it affirmatively appears that the County Court has no jurisdiction and therefore the prosecution cannot legally form the basis of an extradition proceeding. Cases are cited from Texas which it is alleged hold that in order to support a prosecution under an indictment in county court an order of transfer must affirmatively appear from the district court to such inferior court. Such a question cannot be raised in this way as was decided in the recent cases of Lenzen v. State, 16 S. W. (2nd) 234, and Horton v. State, No. 12671, opinion delivered October 13, 1929, not yet officially reported. It will be presumed in support of the pending prosecution in New York State that a proper order of transfer existed. The effect of the Texas cases cited immediately above is to so hold.

It is further claimed that since the relator left the State with the consent of the complaining witness, she having taken him to the train when he departed, that he is not a fugitive from justice within the meaning of the United States Constitution. The case of Ex parte Tod, 47 L. R. A. 566, is cited as sustaining relator's view. The great weight of authority is against appellant's contention.

Reed v. Carrigan, 129 N. E. 8; Leonard v. Zweifel, 171 Iowa 522, 151 N. W. 1054; State v. Wagener, 145 Minn. 377, 177 N. W. 346; Matter of Galbreath, 24 N. D. 582, 139 N. W. 1050. To give such a meaning to a fugitive from justice as relator contends ignores the rights of society. The complainant is not a party to the prosecution and cannot control it.

A point seems to have been made that the indictment accompanying the requisition of the Governor of New York was not properly certified as true and correct by its custodian. Such was not necessary. Ex parte McEntyre, 18 S. W. (2nd) 156. The case of Ex parte Gradington, 89 Tex. Crim. Rep. 432, is relied on by appellant to support his position that such an instrument must be so certified. It was not the intention of the writer of the opinion in the last mentioned case to so hold, as plainly appears from the entire opinion, in which the phrases "certified copy" and "copy certified as authentic by the Governor" appear to have been used interchangeably. It is only necessary that such a document be certified as authentic by the Governor of the demanding state.

Believing that relator was properly remanded, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The only question we deem necessary to discuss is the strenuous insistence of relator that he is improperly held under an executive warrant of the Governor of Texas because the demand for his extradition by the Governor of New York failed to show a seal of the State of New York and was not authenticated by the Secretary of State. The only provision of our State Constitution requiring the use of a seal of which we are aware is found in Art. 4, Sec. 20, and is in the following language:

"All commissions shall be in the name and by the authority of the State of Texas, sealed with the State Seal, signed by the Governor and attested by the Secretary of State."

Whatever may be found in the Constitutions and laws of other states, there is neither in this State nor in the Constitution and laws of the United States a provision requiring the authentication of such a demand in the manner and form claimed by relator herein.

The jurisdictional facts authorizing the extradition of relator are (1) that he must be shown to have been charged with a crime in the demanding state, and (2) to be a fugitive from justice therefrom and bodily present in this state. The Governor of this State had a right to hear evidence in this case and to satisfy himself as to whether or not relator was a fugitive from justice. Speaking of this question, the United States Supreme Court says:

"This is a question of fact which the Governor upon whom the demand is made must decide from such evidence as is satisfactory to him. Strict common law evidence is not necessary. The statute does not provide for the particular kind of evidence to be produced before him, nor how it shall be authenticated, but it must be at least evidence which is satisfactory to the mind of the Governor." Munsey v. Clough, 196 U. S. 372, 49 Law Ed. 517; Roberts v. Reilly, 116 U. S. 80, 29 Law Ed. 544.

The burden is always upon an applicant for writ of habeas corpus in extradition proceedings to overcome the presumption that the Governor's formal extradition warrant was issued upon the proper authority. Ex parte Ponzi, 290 S. W. 170; Ex parte Hall, 284 S. W. 550; Ex parte Yawman, 18 S. W. (2d) 647. It was the right of the Governor of Texas to satisfy himself that the written demand made upon him by the Governor of New York State for relator was genuine. The presumption is that he did so and in the absence of some provision of law requiring what is claimed by relator, we think the same unnecessary. The right of the Governor to satisfy himself that a demand for a fugitive from justice is genuine and actually comes from the executive of the demanding state would seem to afford ample protection to citizens of this state. There is this question, however, to be noted. The agent appointed by the Governor of New York State to receive relator is named in his extradition demand upon the Governor of Texas for the surrender of relator. To this extent such demand may be regarded as a commission to the agent named to receive relator and must under the provisions of the Constitution of Texas be "sealed with the State seal and attested by the Secretary of State." Art. 1005, C. C. P., 1925, is as follows:

"When the Governor deems it proper to demand a person who has committed an offense in this State and has fled to another State or territory, he may commission any suitable person to take such requisition. The accused, if brought back to the State, shall be delivered up to the sheriff of the county in which it is alleged he has committed the offense."

Nothing to the contrary appearing, we presume of the laws of New York State regulating such a matter to be the same as Texas. The judgment in this case remands relator to the custody of the Sheriff of Bexar County and to the agent of the demanding state. In so far as it remands to the custody of the agent of New York State, who does not appear to have been properly commissioned to receive him, the judgment is erroneous. The document purporting to come from the Governor of New York State is regarded as legally sufficient as a demand for the surrender of relator, but insufficient as a commission to the agent of such state to receive him. Likewise the executive warrant of the Governor of Texas for relator's arrest is valid except in so far as it commands that relator be turned over to the agent named in said requisition from the Governor of New York. This does not necessarily entitle relator, however, to his discharge since provisions of the United States Statutes appear to authorize the holding of fugitives from justice under the circumstances shown here for six months from the time of the arrest, at which time the prisoner may be discharged. See Par. 10,126 (R. S. Par. 5275), United States Compiled Statutes, 1916. We have no right to assume that the Sheriff of Bexar County will improperly surrender the custody of relator. The judgment will therefore be reformed so as to remand relator to the custody of the Sheriff of Bexar County, to be surrendered by him to a proper agent of the State of New York, provided he appears within six months from the time of the arrest of relator, and if he fails to do so relator to be by him discharged.

As so reformed, the judgment will be affirmed, and the motion for rehearing is overruled.

*Overruled.*