## LAWSON v. STATE.

### Opinion delivered September 27, 1915.

1. FALSE PRETENSES—OBTAINING MONEY.—Where the evidence tended to show that defendant falsely represented himself to be a revenue officer, that he had the power, and that it was his duty to arrest one A for the commission of a crime, but that if A would pay him a certain sum, that that would be the end of the matter, *Held*, the defendant with the crime of obtaining money under false obtaining money under false pretenses.

2. FALSE PRETENSES—CRIME OF—VARIANCE.—An indictment charged the evidence was sufficient to warrant a conviction of the crime of pretenses; alleged that defendant falsely represented to the prosecuting witness that he had the power to withhold from the federal authorities certain information against the witness, and that he would withhold the same for a consideration of $300; the

proof showed that defendant falsely represented himself to be a revenue officer, with the power and under the duty of arresting witness, but that he would not do so if paid a consideration of $300. *Held,* there was a fatal variance between the proof and allegations in the indictment.

Appeal from Clay Circuit Court, Eastern District; *J. F. Gautney,* Judge; reversed.

*R. H. Dudley,* for appellant.

1. Before representations made amount to false pretense, they must be of a present or past fact. 42 Ark. 131-135; 11 Ark. 596; 12 Ark. 65.

It is necessary, in a prosecution for false pretense, not only to prove the false representations, but also to show that such false representations induced the person defrauded to part with his property. 70 Ark. 30.

A false representation as to a future event is not a false pretense within the meaning of the statute. 12 Am. and Eng. Enc. of L. (2 ed.), 850 and note 5.

There can be no false pretense regarding an intention or future purpose. It could not be applied to a promise to do something, however fraudulent in design or hurtful in effect the promise may have been. *Supra;* 35 Ark. 396.

2. The indictment is bad in pleading conclusions which the defendant had no means of disproving, and not facts upon which the conclusions were based. 98 Ark. 575; 85 Ark. 435; 19 Cyc. 429.

It is bad in failing to inform the defendant what crime he had caused Deakin to believe he had committed, and for what crime he was about to be apprehended. *Supra;* 85 Ark. 499.

3. There is a fatal variance between the allegations of the indictment and the evidence as given by the prosecuting witness, Deakin. 70 Ark. 30.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The indictment is sufficient. The courts hold that if the false representation which is the inducing motive for

the parting with the property is merely coupled with a future promise, this is not sufficient to take the case out of the rule, and that a defendant is properly convicted under such circumstances. 7 L. R. A. (N. S.) 278, 281 and authorities cited in note; 33 Am. Rep. (Ind.) 89, 93.

HART, J.   J. E. Lawson was indicted, tried and convicted of the crime of obtaining money by false pretenses. From the judgment of conviction he has duly prosecuted an appeal to this court. In order to determine the issues raised by the appeal, it is only necessary to abstract the testimony given by the prosecuting witness. His testimony tends to prove a state of facts substantially as follows: The prosecuting witness A. C. Deakin, the defendant J. E. Lawson, and Ed Lucas, were all residents of Greene County, Arkansas, and were friends and neighbors. Mr. Lucas showed Deakin a bill and said that it had been made on stolen government plates. Deakin told him that it was bogus and Lucas replied that it was as good as any money. Lucas asked Deakin if he had received a letter from a man named Bacon, and Deakin replied that he had not. Later he received a letter from Paul Bacon at Memphis, Tenn. The letter stated that the writer had some money that had been made from a stolen government die which could not be told from good money; that they would send out some of this money for a certain per cent. A second letter was received by Deakin which contained a sample bill. Deakin answered the second letter and sent his reply to Paul Bacon at Memphis. He received further letters in regard to the matter but they were sent by C. V. Mansfield and were mailed at points in the State of Missouri. In one of these letters the writer stated that detectives had followed his men from the post office and had taken possession of their mail; that he feared the detectives had gotten a letter written to them by Deakin and on that account advised Deakin to lay low for a few days. The writer also stated that the boys had gotten away with the plates and had paid the detectives to turn him loose. The letter also stated that the writer did not think that

the detectives would arrest his customers. Subsequently the defendant came down to the gin where Deakin was working and told him that he was never more surprised than when he got a letter from Mr. Callahan stating that Deakin had written for some counterfeit money. The defendant told Deakin that he had violated the federal laws and Deakin replied that he had. The defendant then exhibited to Deakin the letters he had written about the money. Defendant further stated to Deakin that the only thing he could do was to pay off. That it would take $400 but that he would let him off for less. That he finally paid the defendant $300. Deakin stated that the defendant Lawson represented to him that he was a revenue officer and also stated that it was his duty and power to arrest him for violating the criminal laws of the United States; but that the defendant was not in fact an officer of the United States. That he paid the defendant $300 and that the defendant did not arrest him. He first stated that the defendant told him that if he would give him $300 that would settle the fine and penalty against him for violating the federal laws and that he paid the defendant $300 in settlement of this fine and penalty. Again he stated that the defendant told him that the payment of the $300 was an end of the matter and that he, the defendant, would protect him; that the defendant, further promised to protect him and to withhold all the information acquired by him.

It is insisted that the defendant can not be held guilty of obtaining money by false pretenses under our statute because he could not have obtained the money of the prosecuting witness by the alleged pretenses, if false, unless the prosecuting witness gave it in settlement of a felony and the prosecuting witness himself being thus guilty of a crime, the law would not listen to his complaint. This doctrine was applied in *McCord* v. *People,* 46 N. Y. 470, where the accused falsely pretended to be an officer with a warrant to arrest the prosecuting witness and thereby induced the witness to deliver to him certain property. The court held that the prosecutor

parted with his property as an inducement to a supposed officer to violate the law and his duty, and that the indictment could not be sustained.   The court said:

"Neither the law or public policy designs the protection of rogues in their dealings with each other, or to insure fair dealing and truthfulness, as between each other, in their dishonest practices.   The design of the law is to protect those who, for some honest purpose are induced, upon false and fraudulent representations, to give credit or part with their property to another, and not to protect those who, for unworthy or illegal purposes, part with their goods."

The fallacy of this reasoning is shown in the dissenting opinion by Peckham, J., where he points out that the primary object sought to be accomplished in prosecutions for crime is the suppression of crime, and the protection of the public.   For this reason, the principle of civil jurisprudence, that where the injured person is a party to the crime or unlawful enterprise, he will not be heard to complain and the law will leave the parties where it finds them, has no application to criminal proceedings.   In criminal proceedings the State is the prosecutor, and the proceeding is in its name.   The complainant is no party to the proceeding.   The prosecution of the accused by the State is not for the benefit of the complaining party, but its purpose is to punish a public offense and to prevent wrong-doing.

It is no answer to say that the accused should not be punished because the prosecuting witness was also guilty of an offense in the same transaction.   This rule was applied in the case of *Perkins* v. *State,* 67 Ind. 270, 33 Am. Rep. 89, where the court held that one who falsely represents himself to another as an officer having a warrant for the arrest of the other for forgery, and power to compromise the offense, and threatens to arrest him, and by means of such representation and threats obtains from him a valuable thing as a consideration for not making the arrest, is guilty of the crime of false pretenses.

In *Commonwealth* v. *Henry*, 22 Pa. St. 253, it was alleged in an indictment that the defendant, with intent to defraud the prosecutor, falsely asserted to him, and also to another person who communicated it to him, that he had a warrant, issued by competent authority, commanding the arrest of the daughter of the prosecutor, for an offense punishable by fine and imprisonment, and that he threatened to arrest her; by means of which representations he obtained from the prosecutor effects and money of the value of $100. It was held, that this was such an obtaining of money under false pretenses and indictable under the twenty-first section of the Act of 12th of July, 1842. See, also, *Commonwealth* v. *O'Brien* (Mass.), 52 N. E. 77; *Horton* v. *State* (Ohio), 39 L. R. A. (N. S.) 423, and case note to 17 L. R. A. (N. S.) 276.

The essence of the offense is, that the false pretense should be of a past event, or a fact having a present existence, and not of something to happen in the future; as a promise to do an act in the future is not sufficient. The promise made to the prosecuting witness by the defendant that he would protect the witness and would settle the crime with the federal authorities was a reference to a future act; and being a promise to do an act in the future was not a pretense within our statute. Beside the prosecuting witness was bound to know that defendant had no power to compromise a crime. However, in *Parker* v. *State*, 98 Ark. 575, the court said:

"The false pretense itself is a fraudulent representation of an existing fact or past event by one who knows that it is not true, and of such a nature as to induce the party to whom it is made to part with something of value; and the facts constituting such false pretense should be stated with due certainty. But the false pretense need not be the only inducement to cause the party defrauded to sign the instrument or part with his goods; the pretense may be combined with other motives or be partly founded upon some promise. It is sufficient if the false pretense operated either alone or with other causes. Therefore it will not invalidate an indictment to allege

other facts, promises or causes in conjunction with the false pretense which is specifically set forth, if such false pretense is sufficient.''

And in *Johnson* v. *State*, 36 Ark. 242, the court held that it is not necessary that the false pretense should be such as is calculated to deceive a person of ordinary prudence or caution. That it was as criminal to defraud the unwary as the wary.

(1) The testimony of the prosecuting witness when given its strongest probative force tended to prove that the defendant falsely represented to him that he was a revenue officer, and that he had the power and that it was his duty to arrest the witness. That if witness would pay him $300 that would be the end of the matter. The false pretense was that defendant had the power and that it was his duty to arrest the prosecuting witness but the defendant stated that he would not arrest him if he would comply with the terms of the defendant. In short there was an implied threat that defendant would arrest the prosecuting witness if he did not comply with his terms.

The evidence, we think, if believed by the jury was sufficient to warrant a conviction.

It is also contended that there is a fatal variance between the indictment and the evidence as to the effect of the pretenses; and in this contention we think counsel are right. An indictment for obtaining money by false pretenses must set out the offense in such terms as will give the defendant notice of the specific criminal act with which he is charged. The indictment is quite lengthy and we do not think any useful purpose could be served by setting it out in full. We deem it sufficient to say that it in substance charged the offense to have been committed by the defendant falsely representing to the prosecuting witness that he had the power to withhold from the federal authorities, charged with the enforcement of the criminal laws of the United States, all information against him and that he would withhold such information for the consideration of three hundred dollars.

(2)   This was an allegation essentially descriptive of the offense as charged.  As we have already seen the evidence in behalf of the State at the trial tended to prove that the defendant falsely represented that he was himself a revenue officer.  That he had the power and that it was his duty to arrest the prosecuting witness; but that he would not do so if three hundred dollars were paid him.  Thus it will be seen that there was a fatal variance between the proof and allegation and the court should have so instructed the jury.  For the error in not doing so, the judgment will be reversed and the cause remanded for further proceedings according to law.